Christopher Wimmer (SBN 263275)
EMERGENT LLP
535 Mission Street, 14th Floor
San Francisco, California 94105
p: 415/894-9284
f: 415/276-8929
e: chris@emergent.law

Attorneys for Plaintiff
JULIA RIVERA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JULIA RIVERA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, STEPHEN COLEMAN, and DOES 1 through 20,<br><br>　　　　Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

COMPLAINT

## INTRODUCTION

1. Plaintiff Julia Rivera brings this action to remedy defendants Stephen Coleman and Does 1 through 20's illegal entry into her home, unlawful detention, and excessive use of force in violation of her constitutional rights, and the City and County of San Francisco's ("the City") development, implementation, and toleration of policies, customs, and practices that led to those constitutional violations.

## FACTUAL BACKGROUND

### I. PARTIES

2. Ms. Rivera resides in the Bayview-Hunters Point neighborhood of San Francisco.

3. The City is a municipality organized under the laws of the State of California.

4. Coleman is an officer of the City's Police Department ("SFPD"). At the time of the events alleged here, he was a member of unit 3073, and wore star number 4184.

5. Does 1 through 20 ("the Does") are SFPD officers whose identity is not yet known to Ms. Rivera. She will seek leave to amend her complaint to show their true names when she ascertains them.

6. At all relevant times, Coleman and the Does were officers and employees of SFPD and the City acting under color of law and within the course of their duties.

### II. DEFENDANTS' VIOLATION OF MS. RIVERA'S CONSTITUTIONAL RIGHTS

7. On September 30, 2015, Coleman and the Does knocked on Ms. Rivera's door, claiming they were looking for one of Ms. Rivera's sons. Ms. Rivera did not grant the officers permission to enter her home, and the officers had neither a warrant nor any urgent need to enter her home that would have excused the lack of a warrant. Nonetheless, they pushed past Mr. Rivera, and entered her home illegally.

8. Once the officers entered, Ms. Rivera repeatedly asked them to leave, explaining that her son was not at home, and that she did not want the officers in her house. The officers refused to leave, and instead conducted an illegal search of both the first and second stories of her home, entering her and her children's bedrooms and bathrooms, and opening other closed doors.

9. As the officers moved through Ms. Rivera's home, they carelessly and roughly handled her possessions, including delicate flower arrangements, pottery, and other curios she painstakingly crafted by hand. When the officers began to search a second-floor closet that contained some of Ms. Rivera's most prized work, she asked them to be careful, and repeated her request that they cease their illegal search of her home.

10. In response to this lawful request, one or more of the Does abruptly handcuffed Ms. Rivera (a timid, diminutive woman in her late 40s), wrenching her arm behind her back, knocked her to the ground, and then dragged her down a flight of stairs to the first floor of her home—causing her so much pain that she lost consciousness.

11. After Ms. Rivera regained consciousness, the officers handed her a Certificate of Release, signed by Coleman. They then left, having found nothing indicating Ms. Rivera, her son, or anyone else was engaged in any illegal conduct.

12. On information and belief, one of the Does was involved in the shooting of another citizen in Bayview-Hunters Point a couple months after the unlawful encounter with Ms. Rivera.

**III.   MS. RIVERA'S EFFORTS TO MITIGATE AND ONGOING HARMS**

13. Ms. Rivera took steps to minimize the Defendants' harm to her. She was admitted to the emergency room the day she was injured, and received repeated follow-up medical care in the months and years following. She also sought mental health counseling, and underwent ongoing physical therapy.

14. Nonetheless, Ms. Rivera remains severely damaged by the Defendants' constitutional violations. The arrest dislocated or twisted her shoulder, clavicle, and elbow; caused nerve damage to her arm and hand, as well as the partial loss of use of her

2.
COMPLAINT

shoulder and arm; and injured her knee.  She incurred medical expenses as a result of her injuries, lost income due to her inability to work, missed out on educational opportunities, was unable to enjoy her artistic avocations, and experienced severe emotional distress, including frequent nightmares, trembling, anxiety, sleeplessness, and uncontrollable crying, all requiring professional treatment.

### IV. THE OCC'S FAILURE TO INVESTIGATE AND THE CITY'S REJECTION OF MS. RIVERA'S CLAIMS

15. On October 7, 2015, just one week after she was injured, Ms. Rivera filed a complaint with the City's Police Commission Office of Citizen Complaints ("OCC").  OCC provided her with updates in December 2015 and March 2016 advising her that an investigation was in process, but on information and belief no substantial progress has been made to date.

16. On July 18, 2016, Ms. Rivera filed a Government Code Claim against the City.  On July 25, the City rejected that claim as late, because it was not presented within six months of her injury (*i.e.*, March 30, 2016).

17. Because Ms. Rivera asserts only federal claims, any noncompliance with the Government Code Claim statutes is not a bar to this suit.

### V. THE CITY IS LIABLE TO MS. RIVERA UNDER *MONELL*

18. Based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), the City is liable for all Ms. Rivera's injuries, because its policies, practices, and customs caused those injuries.  In particular, the City:

   a. Failed to provide adequate training and supervision to SFPD officers with respect to constitutional limits on entry, search, detention, and use of force;
   b. Failed to report and investigate incidents of constitutional violations;
   c. Selected, retained, and assigned officers with demonstrated propensities for excessive force and other constitutional violations; and
   d. Failed to adequately discipline or retrain officers involved in misconduct.

19. These policies, customs, and practices directly caused Ms. Rivera's injuries

3.

COMPLAINT

because the City's failure to properly select, train, supervise, and discipline its officers to avoid constitutional violations, and the City's failure to report and investigate those violations, led to Coleman's and the Does' violations of Ms. Rivera's constitutional rights and serious injuries.

## VI. JURISDICTION AND VENUE

20. Pursuant to 28 U.S.C. § 1331, this court has subject matter jurisdiction over this dispute because it arises under 42 U.S.C. § 1983, a law of the United States.

21. Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), this court has personal jurisdiction over the parties because the City is located in California, the individual Defendants reside in California, and all Defendants took acts giving rise to Ms. Rivera's claims in this state.

22. Pursuant to 28 U.S.C. § 1391, this court is the proper venue for this dispute because the City is located and, on information and belief, Coleman and the Does reside in this district; and because a substantial part of the events or omissions giving rise to the claim occurred in this district.

<u>**CAUSES OF ACTION**</u>

**FIRST CAUSE OF ACTION**

**Unlawful Entry, Search, and Seizure**

**Fourth and Fourteen Amendments to the U.S. Constitution**

**42 U.S.C. § 1983**

**(All Defendants)**

23. Ms. Rivera incorporates by reference the paragraphs above.

24. The Fourth and Fourteenth Amendments to the U.S. Constitution prohibit unreasonable searches and searches, including those conducted without a warrant and without any urgent need or other excuse, by officers acting under color of law.

25. Coleman and the Does unlawfully entered and searched Ms. Rivera's home, because they did not have a warrant, no exception to the warrant requirement applied, and Ms. Rivera did not consent to the officers' entry and search.

4.

COMPLAINT

26. Coleman and the Does unlawfully seized Ms. Rivera. Without any cause to believe she was engaged in any illegal conduct or otherwise represented a threat, they handcuffed her (a timid, diminutive woman in her late 40s), wrenching her arm behind her back, knocked her to the ground, and then dragged her down a flight of stairs to the first floor of her home. This seizure was unreasonable, because Ms. Rivera represented no threat of harm to the officers or interference with their lawful duties, and because the officers seized Ms. Rivera in response to her lawful request that they cease their unlawful search of her home.

27. It was clearly established at the time of these events that the officers' entry, search, and seizure were unconstitutional.

28. As a direct and proximate result of Coleman's and the Does' actions, Ms. Rivera has suffered damages, including pain and suffering, severe physical injuries, medical expenses, extreme mental and emotional distress, attorneys' fees, costs of suit, loss of earnings, loss of enjoyment of life, and other losses not yet ascertained.

29. Coleman and the Does acted intentionally, willfully, maliciously, negligently, and with reckless disregard for and deliberate indifference to Ms. Rivera's constitutional rights and physical and mental wellbeing by unlawfully entering her home, searching it without a warrant or excuse, and using an outrageous amount of force against her. This conduct is sufficient to support an award of punitive damages.

30. The City acted intentionally, willfully, maliciously, negligently, and with reckless disregard for and deliberate indifference to Ms. Rivera's constitutional rights and physical and mental wellbeing by failing to properly select, train, supervise, and discipline its officers to avoid constitutional violations, and failing to report and investigate those violations, which led to Coleman's and the Does' violations of Ms. Rivera's constitutional rights and serious injuries. This conduct is sufficient to support an award of punitive damages.

///

///

5.

COMPLAINT

**SECOND CAUSE OF ACTION**

**Excessive Force**

**Fourth and Fourteen Amendments to the U.S. Constitution**

**42 U.S.C. § 1983**

**(All Defendants)**

31. Ms. Rivera incorporates by reference the paragraphs above.

32. The Fourth and Fourteenth Amendments to the U.S. Constitution prohibit the use of excessive force—i.e., force that is unreasonable under the circumstances—by officers acting under color of law.

33. Coleman and the Does used excessive force against Ms. Rivera. Without any cause or excuse, these officers handcuffed Ms. Rivera (a timid, diminutive woman in her late 40s), wrenching her arm behind her back, knocked her to the ground, and then dragged her down a flight of stairs to the first floor of her home. This amount of force was unreasonable under the circumstances, because Ms. Rivera represented no threat of harm to the officers or interference with their lawful duties, and because the officers applied this force in response to Ms. Rivera's lawful request that they cease their unlawful search of her home.

34. Each of Coleman and the Does either participated actively in the excessive use of force, or failed to intervene despite the opportunity and duty to prevent the violation of Ms. Rivera's constitutional rights.

35. As a direct and proximate result of Coleman's and the Does' actions, Ms. Rivera has suffered damages, including pain and suffering, severe physical injuries, medical expenses, extreme mental and emotional distress, attorneys' fees, costs of suit, loss of earnings, loss of enjoyment of life, and other losses not yet ascertained.

36. Coleman and the Does acted intentionally, willfully, maliciously, negligently, and with reckless disregard for and deliberate indifference to Ms. Rivera's constitutional rights and physical and mental well-being by unlawfully entering her

6.

COMPLAINT

home, searching it without a warrant or excuse, and using an outrageous amount of force against her.  This conduct is sufficient to support an award of punitive damages.

37.   The City acted intentionally, willfully, maliciously, negligently, and with reckless disregard for and deliberate indifference to Ms. Rivera's constitutional rights and physical and mental wellbeing by failing to properly select, train, supervise, and discipline its officers to avoid constitutional violations, and failing to report and investigate those violations, which led to Coleman's and the Does' violations of Ms. Rivera's constitutional rights and serious injuries.  This conduct is sufficient to support an award of punitive damages.

## **PRAYER**

Ms. Rivera prays for:

A. Compensatory damages in an amount to be determined at trial, but in excess of $150,000;

B. Punitive damages in an amount to be determined at trial;

C. Her reasonable attorneys' fees;

D. Her costs of court, including expert costs;

E. Pre- and post-judgment interest; and

F. Such other relief as this court deems just and proper.

Dated:  September 29, 2017         Respectfully submitted,

By: _____
                                    Christopher Wimmer
EMERGENT LLP
Attorneys for Plaintiff JULIA RIVERA

7.

COMPLAINT

**DEMAND FOR JURY TRIAL**

Plaintiff Julia Rivera demands a jury trial on all issues triable to a jury in this matter.

Dated:  September 29, 2017          Respectfully submitted,

By: _____
Christopher Wimmer
EMERGENT LLP
Attorneys for Plaintiff JULIA RIVERA

8.

COMPLAINT